Case number 20-1112 et al. Communications Workers of America, AFL-CIO Petitioner v. National Labor Relations Board. Mr. Ginsberg for the petitioner, Mr. Weitz for the respondent, Mr. Theodore for the intervener. Good morning. Good morning. Please proceed. Thank you. Good morning and may it please the court, Matthew Ginsberg on behalf of the petitioner, Communications Workers of America. Your honors, T-Mobile told employee Chelsea Beffert that it was reprimanding her for sending an email to her co-workers because that email concerned the union. That alone constituted a violation of the NLRA. In addition to this direct evidence, the circumstances also strongly suggest that T-Mobile discriminated against Beffert because of the union content of her message. T-Mobile routinely permitted other employees to send email invitations to personal events like birthday parties and baby showers. Only Beffert's invitation to a weekend social event at a bowling alley was singled out for censure and that was because T-Mobile perceived the event as a union meeting. The company's after-the-fact explanations for its actions are wholly implausible and strongly suggest pretext. T-Mobile acknowledged it had never previously applied any of the policies it invoked as reasons for reprimanding Beffert and T-Mobile's characterization of Beffert's email as quote-unquote junk mail highlights the fact that the company targeted Beffert's email because it disagreed with her message. The board's dismissal of the discrimination claim in the face of all this evidence was based on a fundamental legal error. The board held that the general counsel failed to meet its burden of T-Mobile quote permitted employees to send mass emails for their personal benefit or quote to further any organizational purpose but T-Mobile did not prohibit emails on either ground and did not justify its action on either basis. So help me understand. I think I understood the board to say that because we adopted a new standard in the middle of this case we're going to apply that standard because we've held that that standard applies retroactively to any case that's pending and the union never challenged that before the board and therefore as it were arguably it's stuck with that rule that applies retroactively. So the board says applying that rule the general counsel failed to meet his burden to show that the employer discriminatorily applied its policies. Why is that either legal error or factual error by the board? So your honor I with respect I don't think that I do not think that's actually the board's argument. I believe that the board's argument is that the board applied the register guard standard. Well let me put it this way. I'm reading the board's decision and I'm looking at what it said and that's what my question is based on. Right okay so as we explained in the reply brief and in fact as the employer said as well the discrimination standard has not changed from register guard to purple communications to the current board decision of Caesars Entertainment. So that's a legal error by the board in how it interprets its precedent? If the board says that it's changed its precedent in the I just I with all respect I don't see in the board's decision anywhere where it says it's changed its discrimination rule. Well and in Caesars Entertainment we adopted this rule and you cannot discriminate basically it says as far as section 7 is concerned unless you can show that the employer allowed something that was of the same character and now it's disallowing it. Yes and and so that I agree that is the board's legal test. I guess the only point of of disagreement with the interpretation that that we're having is that I believe that legal test is clear in register guard and that the board just readopted it both both in purple communications which dealt with with email more generally and then in Caesars Entertainment which flipped back to register guard. But throughout the through line through those cases is the discrimination standard which which hasn't changed and I don't think the board in its decision was suggesting it had changed. But what we're quarreling with is that we think the board has misstated what that standard is going all the way back to register guard. So when the board says in other words unlawful discrimination consists of disparate treatment of activities or communications of a similar character because of their union or other section 7 protected status you would agree that that's the standard under board precedent? Yes we agree that's the standard we just think that when the board then goes in the next paragraph and says that what that means is that the union has to show that the employer permitted employees to send emails for personal benefit organizational purpose that's not a correct application of that standard under this court's case law review of register guard itself. So that is a I'm trying to understand that's a legal error or that's a factual error in finding that the employer had not previously allowed communications of similar character. So thank you for that question because I think that goes right to the heart of things. It's a legal error because the board after in the first paragraph correctly stating the broad rule it must be similar activity then restates it in a way that is error and it's error in exactly the same way that the board erred in register guard and this court reversed in part in its decision in guard publishing which is to say that the similar activity turns on you know the question of similarity as judge Easterbrook sort of famously put it in the guardian publishing decision that preceded this court's decision in guard publishing you have to look at what is the baseline for comparison and for example when we use this board said well that union email was for an organizational purpose so that the employer was permitted to prohibit it this court said well wait a second no you have to look at the board's excuse me the employer's rule to see what the baseline of comparison is in that case the employer rule was no solicitation generally so the employer picking and choosing on the basis of organizational status was applying the wrong baseline so they were applying the discrimination rule incorrectly and that's that's exactly what the board has done here the board has said the general rule you have to look at whether the communications are of similar character but then when it goes to apply it it it puts this gloss this legal gloss on it of organizational purpose or personal benefit which has no basis in the employer's rule here there's nothing in the employer's rule about those things and the employer in fact hasn't sought to justify its actions on those bases at all so that's a legal error and then all the factual find that of course once you have that fundamental legal error of what the standard is then trying to apply that to the facts creates all sorts of problems because we think the discrimination is clear here when you correctly apply the legal test i hope that answered your question so the discipline as well as any stated reasons at the time so the the baseline so i want to if i may i'd like to take a half a step back and answering your question you know like any discrimination case there's a variety of evidence here there's the direct evidence the stated the contemporaneous stated reasons the employer gave for its actions which in this case all involved it was union activity so we think i have a bone to pick on that but okay go ahead and then you have the circumstantial evidence which goes to the comparators and the comparator the comparators are based on what the employer's rules were here what we know about the employer's rules is that they generally allowed personal use of email and and there's evidence for example of invitations to other non-work social events like birthday parties and baby showers and so we you this was an invitation to a weekend social event at a bowling alley yes it was to talk about working conditions but it's similar in all meaningful ways under the employer's policy to what they permitted then the third piece of evidence is then the employer after the fact comes in and points to some of its policies and says no that wasn't permitted under these other policies and we think that as the alj found and the board doesn't disturb this that we think those that just shows pretext i mean this is was not junk mail within any meaningful sense of junk mail which was the main policy the employer pointed to here so there's sort of three buckets of evidence the direct evidence the circumstantial evidence and the pretext evidence so if this were a title 7 case and you were presented with these different buckets of evidence they would all point in the same direction uh and that's that's how we we present all right i think i'm structuring it slightly differently and you know rather than direct and circumstantial i'm thinking about it as what are we measuring it against we're measuring the employer's conduct as you know if it's prohibited by the policy well that's one thing it could still be discrimination if it's prohibited by the policy but violations of the policy have otherwise been tolerated right yes but if it's not even under the policy which is what the alj found and i don't think that that's been disturbed by the board he's not even under the policy then we have to look at well you know employers can do things other than what's in their policy and then we have to evaluate those for whether they're being done in a discriminatory manner and here uh elliot gives a bunch of reasons that overlap with but are slightly distinct from the policies which the alj refers to as newly promulgated policies and so then we have to look at those and see again with comparators like are a are they legitimate and b are they being uh non-discriminatorily applied right and that's where you come up with with potentially proof of pretext that they're being discriminatorily applied is does that make sense to you i yes i understand i mean i i guess i have a little bit of a difficult time understanding how what elliot said for the first time in his email after the fact uh should why that should be considered part of the employer's policy that we use as a basis for comparison since obviously until he said it at least parts of what he said nobody had ever heard any of those rules before it depends on whether he's characterizing it as an existing rule i mean if if nobody ever you know brought a um you know a garbage bag into the office and there was no policy against bringing your you know your composting reeking into the office and and the employer just said like um actually take that home i don't want that in the office and didn't in any discriminatorily discriminatory way do that like there's nothing employer prerogative persists even if it's not codified is i guess what i'm saying and then the question becomes you know how is that prerogative being exercised right i i understand i understand i mean i guess the the things i would say are that there there is good comparative evidence here about what the practice was but so going back to the elliot email you say that that t-mobile gave only one explanation and that it was anti-union but elliot's email um says you know what's not appropriate is sending emails to large number numbers of employees and then in the next paragraph he says you know y'all have rights to join the union and he puts it in a in a context that is you know not as you can sort of condense it as that he's saying emails about the union are not appropriate and that's i'm not sure that's a fair reading of his email we don't allow mass communication it's not appropriate to solicit for purpose and then he goes to the next part since this email address union issues i'd like to take an opportunity to respond nobody's being silenced blah blah blah you can talk and break areas you can talk from home you can use social networks off the job of course now that's intention with the with the past policy um right well two responses your honor one is that prior to this email miss uh who and it was and it was all about the the union nature of the email and when and when you couldn't send emails and you couldn't she said you could or you couldn't use at one point she said you could not use work email at all to send emails to co-workers about the union and i guess our point is that's a separate piece of evidence you had characterized the elliot statement as anti-union i i believe well i if i if i did i misspoke i meant those two pieces of evidence which occurred on the same day those were the two those were the two interactions that occurred contemporaneously or immediately after miss beffert sent her email the following tues the following tuesday she was counseled and then the facility-wide email from elliot went out on the same day in fact she got back to her desk from her counseling and had received elliot's email so i we take those together as contemporaneous evidence that what the employer was focused on was that the union nature uh of the email i i know i'm into i'm past my time i'm of course happy to answer questions from the panel but i have i have two about the kind of secondary issues in this case where you finished judge pillard yeah go ahead if if we conclude that the rebuke of of beffert was lawful i know you disagree with that but if we make that conclusion does that mean that the new rules that were later promulgated in response were also lawful no your honor and as we explain uh particularly in our reply brief although also in our opening brief um everybody agrees all sides agree that if you agree with us on the discrimination issue then the follow-on rules right no but my question is that if we disagree with you on the first right so then uh then you have to look at the lawfulness of the of those rules per se and as we explain for to pick one the social media rule uh clearly would interfere with the exercise of section 7 rights in its own in its own in in and of itself because it says no use of social media on the job first of all that's totally contradictory to what the written policy is which permits and and i i i i appreciate it i i i we call that part of your brief and and i just wanted some clarification on whether you were making concession or not and you're not which i think we are not a wise uh tactical decision to not make that concession uh my second my last question is uh i take it that it's it's not lawful for an employer to promulgate rules in response to statutorily protected union activity but if we conclude that the employer here promulgated new rules in response to union activity that was not statutorily protected was that lawful so this sort of merges with my prior answer it is part of the it's part and parcel of the analysis of uh the rule of of the lawfulness of the rule because the analysis it's it's going to be case by case it's it's it will sometimes be lawful for an employer to promulgate new rules in response to union activity that was not statutorily protected and sometimes it will not be lawful depending on the rule okay that's correct your honor i'm i i cut you off if you have more that's that's fine by me but i'm i'm finished with my questions no that's that's fine that's correct your honor all right thank you thank you why don't we hear from for counsel for the board and uh we'll give you a few minutes in rebuttal after we hear from intervener good morning may it please the court eric whites on behalf of the national labor relations board um i think it might be most helpful for me to start by clarifying what the legal standard in this case actually is uh and as a preface to that the legal standard is not even properly before the court because neither aspect of it was challenged by the union below there's two components to the legal standard first the board's decision in seizures entertainment which overruled purple communications going to your question uh judge rogers and so in seizures entertainment the board held which is current law that employees do not have a statutory right to use their employer's email system uh presumptively and that an employer can restrict access to its email system for any reason or no reason at all uh with one exception at issue here which is that an employer may not do so in a manner that discriminates against section 7 related activity and that goes to the second aspect of the legal standard here which is the board's register guard standard which again was not contested by the union and is not um at issue before the court uh but nonetheless many of the union's arguments are essentially inconsistent or express disagreement what with what the board's register guard standard actually is so in register guard the board adopted a new standard for discriminatory enforcement specifically in that case it was also in the context of email restrictions and what the board said was that um in order to establish discrimination the board's general counsel has to prove before the board uh that the employer had allowed emails of a similar character so it's essentially a disparate treatment standard uh where the general counsel has to show that these section 7 related emails were prohibited but emails of a similar character were previously allowed um so responding to some of the arguments that the union makes um what about barge publishing you haven't i mean that that standard isn't isn't the standard we we would apply without the baseline that's emphasized in guard publishing well your honor in guard publishing the court did not suggest that it was um you know taking issue with the the standard chosen by the board and that's why as we point out in our brief i think the uh most reasonable way to interpret guard publishing is that the court was essentially applying that standard and that that was ultimately a factual disagreement between the board and the court uh where the court found contrary to the board that in guard publishing um the employer had allowed emails of a similar character because it allowed other personal solicitations but then it had prohibited union solicitations so in that the board or excuse me the court essentially found applying guard publishing that those were emails of a similar character so that's in our view just a factual disagreement rather than a legal disagreement however even assuming that the court were to read guard publishing as applying a i would just point out that in this case the union did not challenge register guard for the board um and so our position would still be that that register guard is the appropriate legal standard on review in this particular case and with respect to the baseline in particular i think part of the union's disagreement with register guards is its focus on uh you know whether the prohibition of the emails here were consistent with the terms of the employer's pre-existing policies but as the the board noted in register guard that is not the standard chosen by the board because for example an employer could decide for the first time that it doesn't want to allow this type of email even if there's nothing in a prior rule specifically referring to that i'm not i wouldn't necessarily concede that that is the case here uh but the relevant inquiry at the end of the day is whether the employer had previously allowed emails of a similar character and so it was essentially treating disparately these section seven related emails i think i think um i think we're on common ground that the alj found and you said this this isn't fatal to to the board's position the alj found that before its emails were not covered by the written policies and as i was suggesting in my questioning of mr ginsburg i don't think that's the end of the matter then we look at what the uh employer representative said when they disciplined before right and and in terms of those interests we look at whether that has been discriminatory applied or not and so are we on common ground that the i mean the board did not challenge or disagree with the alj's determination that befort's activity was not covered by the written policies right well i i'm not sure that the board adopted those findings the board noted that it was only adopting the alj's findings as consistent with its opinion and the alj was applying purple communications which was a different stamp for the first part of the standard was a different analysis because under purple communications the default is essentially reversed where employees have a presumptive right to use their employer's email system and it's the employer's burden to come forward with um you know policies or justifications why it should be prohibited but this is going back to the to the back and forth uh with uh triggered by judge rogers first question i'm i find the the invocation by alj and by the board of purple communications and caesar's entertainment to be somewhat beside the point because the in the union here is not claiming a carve-out from existing policies as a necessary protection of union activity the question is a discrimination question which neither as as mr ginsburg emphasized neither purple communications nor caesar's entertainment affects the discrimination question and and the and the union has not challenged the legitimacy of those policies so the question is have they been discriminatory applied am i missing something no that's correct your honor and caesar's entertainment neither caesar's entertainment nor purple communications modified register guard but i think the disagreement between the board and the union here is what register guard actually says um and you know i would direct the court to read register guard the board has a very clear analysis of the standard it was adopting and that's a disparate treatment standard where the reference point is previous emails allowed by the employer not its written policies or even the contemporaneous explanations given by the employer well that's where we we have the um guard publishing opinion which which does very explicitly say we look at the reasons given and not at post-hoc reasons we look at the the contemporaneous employer rationale and uh where what's where the reasoning where you can look back and say well you know this was sent on a tuesday and that was sent on a monday and that's a union neutral rationale that that isn't going to cut it under guard publishing you're going to look at what the employer claimed was its interest and its reason and when you apply that to emails that were permitted uh and emails that i mean non-union emails and union emails and if they're treated differently with respect to that rationale then you have a case of discriminatory enforcement no well again your honor i think guard publishing can be read as consistent with register guard um to the extent that it's not i would again note that the the union did not request or challenge register guard in this case before the board or say that the board should have applied a slightly different analysis to the extent guard publishing is different um again i think guard publishing ultimately was just the court disagreeing with the board's factual finding that in that case there were no emails of a similar character and part of that analysis was you know the board did or excuse me the court did make a reference to the explanations given by the employer but that's not necessarily part of the board's own standard and register guard but even if it were your honor i would note that factually in this case you know the when mr elliott sent the email out to the employees in this case the focus of that email was that this was sort of an unprecedented situation of an employee sending mass emails to hundreds of co-workers and so and you know there was an explanation given unlike in guard publishing itself where the employer did not really make any delineation um and the court found that it was therefore discriminating along section seven lines which if i could just in the time i have left note um the other significant factual disagreement uh with the the arguments that the union's making this case there's not any evidence in the record in this case that the employer had allowed similar mass emails to be sent by employees there's evidence of a small number of employees that were sent by the employer itself uh regarding things such as baby showers or um you know free food and events such as that there's a lost power cord or something like that yes uh one non-supervisory employee although in a different classification sent an email out about a lost charger right and there's nothing in the policies that says you know employees of this classification have different rights than employees of that classification and so that is evidence of discrimination that person wasn't disciplined well there's nothing in the policies your honor though that classification employee did have access to a a facility-wide listserv which miss beffer did not which is why she had to you know circumvent that by sending it manually um but i think the board found that you know an email about a lost charger is just not of similar character as an email you know soliciting or inviting employees to attend an outside event but under guard publishing which everybody cites as governing law and we certainly are bound by it's not a question of whether we can look back and make a distinction it's a question of the distinctions that the employer made at the time right well i'm not sure that the court is bound by guard publishing your honor because uh the issue of the legal standard to apply is not properly before the court because the union did not challenge register guard the board's decision and register register guard below and so i think the board's explanation of the standard in register guard as applied by the board here is ultimately what should be controlling and that the court does not even need to get into any further analysis of the legal standard in this case because in the board's view this is ultimately just a factual dispute and an application of standard to the particular facts of this case um so let me be clear were you agreeing with judge pillard's premise that's what i need to understand uh as i understood her question it was that the standard is beside the point um that the question is discrimination have the policies been discriminatorily applied if that's what you agree with then did not the board have to address what essentially the alj found was the discrimination in this case um sorry about that you know in other words and maybe i i just misunderstand this case but given that as the union says there's no change in the standard in the sense it just went back to the pre-purple communication standard the board was finding that the record didn't show that there was a violation of the act period in other words to put it very simply in a hypothetical suppose the employer had clearly been discriminating period for reason a the board says reason a is not discrimination because our standard requires you to show b yes uh well so the board adopted a very specific standard for discrimination in register guard which is this essentially a disparate treatment standard and i think the the union because it essentially has to says that it's not contesting that standard because it did not challenge it below but i think the union is essentially arguing for a broader discrimination standard than what the board adopted in register guard which is this disparate treatment inquiry well what i understood and maybe i am incorrect is that when the board said in caesar's entertainment that it was overruling purple communications it was shifting the burden there was no presumption in favor of the employees anymore that's correct so as the overarching question of whether employees have a statutory right to use the email system that shifted however register guard remained the discriminatory enforcement standard even under purple communications so that has not changed but the you know the initial presumption of whether they have a right or not does change the overall analysis which is why the alj's analysis in this case um you know was was looking in a different context than what the board was looking at so i guess do you think i just need to be clear are you in agreement with what i understood to be the premise of judge hillard's question that there's no disagreement about the standard the question here is discrimination in whether the employer in those first two responses by the supervisor and then the director as to what they told the employee well i guess i would disagree with that your honor because i think under register guard that's not the focus of the board standard for discrimination the board looks at is there disparate treatment such that when the employer has chosen to prohibit these emails now which the employer under caesar's entertainment can do for no good reason or no reason at all it can simply say don't send these emails and not provide any reasoning so so just just to clarify that because i think we're getting some work understanding your position sorry to jump in like that but in your view it doesn't matter whether there's any evidence in the record of the basis for t-mobile's decision t-mobile need not at the time have had any interest or policy or ground that it was distinguishing between mass emails for personal benefit versus those for organizational purpose it need not have had that as long as it can be discerned by the board in retrospect i think that's correct your honor because again it's ultimately this disparate treatment analysis although i would note that even under register guard of course the board noted that um you know if there's affirmative evidence of anti-union animus that that was the reason for right that's a separate issue yeah yeah but but when we're talking about comparator evidence and circumstantial evidence of discrimination so can you i mean i i take your position is that it doesn't matter whether there is any such evidence but can you identify any evidence in the record before the board's order where t-mobile defended its decision it's these disciplinary decisions by reference to a distinction between mass emails that are sent for personal benefit versus those sent for organizational purpose well yes i think that's a helpful question your honor because that that gives brings me to a point which i i didn't address earlier which is that the union focuses a lot on that that one sentence from the board's decision in this case as if that is the board modifying the legal standards in some way that that's just the board making a finding of fact essentially in this case that there aren't of a similar character that's the ultimate standard under register guard and so it doesn't need to necessarily turn on this personal versus organizational distinction what the board's decision ultimately rested on here was that the employer just had not allowed similar mass emails like the ones that were sent here and and i think that's also consistent with the reasoning that the board's actual standard under register guard but i think all of the evidence here is consistent that the employer decided that it did not want employees sending these kind of mass emails it had never previously done so or necessarily been confronted with an employee doing so and so as the board found the general counsel failed to establish this discrimination exception to caesar's entertainment by producing affirmative evidence of disparate treatment so your answer is that before the board's decision you you can't point to evidence that the employer made this distinction but it's your understanding of register guard that it needed i think that's correct your honor and again that i don't think that distinction in particular was the basis for the board's decision here i think ultimately the standard is were there emails of a similar character and the board found here that there were not based on the record evidence right elliott says though and i i think i'm understanding you think it doesn't this is not the baseline elliott's email said we don't allow mass communications for any non-business purpose and the board finds that there were in fact several emails sent that were for non-work purposes and the reason that you don't find that to be evidence of discrimination or see that as evidence of discrimination is i gather that there is a discernible difference between the kinds of mass emails that were authorized that were not disciplined and the email that beverage sent that is that right yes i think that's correct and also factually i i think the employer did consistently make the argument that for example an email about a lost phone charger and even some of the camaraderie building emails that are in the record and the employer's view were germane to um work interests in a manner that miss beverage emails were not um all right shall we hear from intervener thank you thank you one more question i'm sorry um did the board address the alj's finding that one of maran's statements was unlawfully coercive and if so where did the board address that uh well i think the the the finding that the union references regarding coercion if the court looks back at the alj's finding uh the alj used the word coercive but the alj was essentially finding that that was that established an overbroad rule that um would have been interpreted as restricting section 7 protected activity and so i think it was addressed by the board in the footnote um in the second decision before the court where the board found that employees would not interpret any of these statements um to be overbroad rules because they were all made in the context of miss beffers emails which the board found were unprotected for all the reasons we've been discussing and if we disagreed with you about the discrimination then the right course on that second question would be to remand for application boeing uh that's correct your honor thank you thank you all right council for intervener good morning may it please the court uh mark theodore representing t-mobile um i've been following along obviously the argument to uh up to this point and i just wanted to point out a couple things about the record you have before you first is you have more emails in the record from miss beffert both including the rejected emails and the emails she successfully sent then you do have comparator emails and you have nine comparator emails all of which were sent to a wicc everyone which stands for wichita call center everyone distribution list every person who sent those emails had authority and permission to send those emails on that service miss beffert did not eight of those were sent on behalf of management and when you talk about just to to take uh and and the testimony is all in the joint appendix the food uh announcements are all just reminders of things that were already on a calendar for employees the emails regarding hockey tickets are incentive and morale purposes two of the emails are for uh signing the card of the ceo the birthday card of the ceo and two emails were for team building morale issues lip sync contests and a salsa competition and the only email that doesn't really fit in that is the senior representative who sends for the lost phone charger but he too had access to that and he also is clearly just seeking a lost item on behalf of one of his teammates and that is uh because he says right in the email we had it in the pod yesterday or something to that effect so is t-mobile is the policy t-mobile is relying on the policy against the the enterprise user standard that that's the policy against unauthorized uh access to accounts correct and and and it also to the acceptable use policy both of which cover that and the no solicitation and distribution policies so but but she did not gain access to um just to a higher level she didn't actually as you pointed out use those mass uh access she couldn't in fact she got a message that said try sending right you try to resend with fewer recipients and she she did that well exactly but but i think the the fact that she wasn't able she was able to figure out a way to copy and paste it doesn't mean that gave her permission to do it and that was all by the way the company told her to stop doing because you won't find an email in the record from a customer service rep beffert was a customer service rep she was the only one uh who did this you won't find a comparator email of anything close to what happened here this is a facility with hundreds of people and the policy that that prevents a customer service rep from sending an email to the number of people that she is able to access on her authorized account is the acceptable use policy is is well both the acceptable use policy which prevents essentially junk mail which is defined as mass emails to people you don't know seeking things and the enterprise union standard which is which specifically says you have to have appropriate authorization and the authorization processes start with a remedy ticket and specific approvals from t-mobile management was the under the acceptable use policy was did her email interfere with the use of the resources for legitimate business purposes that's not the part of the the policy you're relying on well it it did in one way there is testimony that several people complained about receiving it which is you know how how t-mobile became aware of it but did it interfere with the use of the resources meaning the email system because you know you sometimes you can get spam i'm actually subject to an email attack right now and i can barely use my email because i get twice as many non-authorized emails every day that's uh all of us your honor i but that's not that's not the part of it you're talking about this is junk mail this is junk mail that's what that's what we relied on that's what we've relied on from the throughout and that uh uh you know this you there is just something that there is nothing at all comparable to this in in in the record and and the board i think so found and when when we talk about it you know at the end of their their decision they basically say there is no evidence i don't say basically there's no evidence respondent permitted employees to send mass emails for their personal benefit much less for any organizational purpose that's i think the board is saying look we don't even really have to get to write to register guard which is the the law because there's no there's just nothing here to compare it to so are you agreeing with mr weiss that it that you uh basically the guard publishing is not doesn't apply here or do you think you meet guard publishing i think we meet guard publishing i think guard publishing did not as i as i read that case did not did not disagree with the board standard it disagreed with the what the employer had allowed and not allowed and just and it was a factual disagreement it was not a legal disagreement and in in the post hoc rationalization that that that panel said was was basically the employer's post hoc right right and and that's not present in this case you're saying the employer here doesn't even have a post hoc rationalization the board attributes one to the employer and that's that's correct i don't think they they they attacked the legal standard at all and i think you can read this board's decision though is saying look we don't even we can't we don't have to get there because there's nothing comparable to it there's just nothing there there's no mass email so the the distinction so the t-mobile does not doesn't didn't and didn't have to make any distinction on its policies or on the rationale it offered to bear forward between mass email sent for personal benefit or organizational purpose on the one hand and all other mass emails that that's absolutely correct your honor i have a question about overbreadth versus coercion are do you see those as two separate issues and and if so how do you respond separately to them i i um personally i don't i i don't i do not see them as two separate issues uh i i think the board the board if you're talking about the the separate rules the you know the board law is pretty clear that if something is considered overbroad it is coercive in other words it's sort of a direct message don't don't do union activity correct i mean you know it's sort of you know when i listened to a lot of this nlrb precedent in the last 15 years or so it's been a lot like a trendy diet right it only works for half of the people and then it gets replaced by the next big fad so you have to sort of look at things in context of how the board's going to try to interpret thing is for from the employer's perspective we always have to be very very uh mindful that that next big fad could be coming down the pike and change the law in this and so what you know what is overbroad today and coercive today may not be overbroad tomorrow and that's boeing and lutheran and all those cases so you also agree that if and i i know this is not your position but were we to disagree with you on the discriminatory enforcement point that with respect to overbred coercion that should be remanded for application of boeing i think that's right anything further what did did you i thought that the board said you that you hadn't offered business justifications did you offer business justifications that would that would apply under boeing we never got there your honor because uh you know they they uh under caesars again if we're talking and i want to make sure you're i'm clear about what we're talking about if we're talking about the supplemental decision in those rules the caesars the board severed those allegations on the very limited basis of whether there was an alternate ability of employees to communicate and the general counsel had no other proof the union had no other proof and we submitted which i actually just replicated at the last portion of our brief all of the evidence from all of the witnesses including beffert uh all the witnesses who were engaged in union activity who who readily admitted that they had many alternate means of communication anything further nothing thank you all right um so counsel for petition yes uh thank you your honors so even if this court were to accept elliott's emailed statement as the employer's rule which we obviously don't agree the court should do and i'll address in a second if you look look at the evidence in this case and the alj's decision it was not you know as affirmed the facts were affirmed by the board uh at page joint appendix 18 which is page 7 of the board's decision uh he found another employee and i'm quoting sent notification of birthday plans for another employee throughout the facility baby showers also may take place in which the staff holds a potluck dinner and people voluntarily purchase joint gifts so and a bowling invitation if done for recognition of work group would be considered business related so there is evidence in this record of similar invitations miss beffert sent one email to each of her co-workers inviting them to a bowling social event to talk about working conditions and to have fun the following night one time uh and we think that that even under elliott's standard is clearly comparable uh and uh even the testimony uh the the the the there was plenty of testimony from both uh the union's witnesses and the employer's for the uh the board's finding i would also just say that if you look at the guard this court's guard publishing decision the court clearly looked at the employer's written rule as well as its explanation because the basis for reversing the board on the on on its finding that one of the the disciplines of the employee for sending a union email was was uh was reversing the board's that was lawful was because even though the employer said it was for an organizational purpose the rule said didn't speak about organizational purpose at all so it's we dispute that elliott could after the fact create a new rule when there was a written rule in place which as you've just heard from council was the the junk mail rule and the other rules they invoke uh that didn't apply so we don't think elliott can after the fact come in and create a new rule but even if even if if this court were to find that the evidence in the record shows lots of comparables uh and we think the way that the board treated that evidence with the way it applied the register guard standard the way it explained what the register guard standard was was a legal error and how do you respond to mr white's contention that we only can look at register guard in its own terms we can't look at guard publishing because you didn't challenge or raise guard publishing or like where does guard publishing stand i i don't understand the argument in because i as i read register guard and we discussed this at in our reply brief at pages 14 and 15 register guard and we have all the citations so i won't they're in our reply brief i could read them to you no thank you um you know prominently cites this court's decision in lucille salt salter packard children's hospital for what the basic uh discrimination standard is it adopts that standard uh and then uh when that comes up uh you know i mean there's there's a back and forth with this court over its application of the standard uh in that decision but we we don't quarrel with that standard we just don't think uh what the board has done here is consistent with its register guard standard and and that this court basically in register guard the court the board uh stated a proper legal standard and then this court reversed because they they they didn't apply it properly and that's exactly what went on here they they cite that same standard in the board sites that same standard its decision at the top of the first column in page three of its decision and then goes on to change that standard by saying well you have to show organizational purpose or guard so we don't have a quarrel with the basic disparate treatment standard stated we have a quarrel with how they interpreted it to apply it in the case just that it's it's very very it's not exactly the same obviously because the facts are slightly very similar to what happened in those cases just to pin this down let me ask you in another way so mr weiss and mr theodore have argued that under register guard it's it's more like um a rational basis test than it is like a discriminatory enforcement test in a in another context they're basically saying if you can you know conceive of a reason after the fact to distinguish her email from emails that were permitted that is fine under register guard i i heard them say that there is no basis for that argument in the board's decision in this case in uh the board's decision in register guard or in any board decision they have net the board has never adopted that position and in fact in this case when it cites the register guard standard again in the top left column on page three of its decision at joint appendix 14 they cite the register guard standard and uh and that's that quote i'm sorry they quote the register guard standard and that quotation comes directly from a site to this court's case in lucille salter packard children's hospital it's just a it's a very well established discrimination standard so if the board meant to adopt some new different standard other than that standard which has been in place for a long time they had to say so and they never did the only place they've said so with all respect to my opponent is in is in counsel's brief not in the board's decision or in any board decision you would concede that the company does not have to distinguish uh mass emails that are dissimilar from the email in question i mean this t-mobile i'm sure sends a mass email to its employees every day probably multiple times a day thousands of times a year and t-mobile doesn't have to say at the alj stage or at the board stage or here well we're going to distinguish the email in question that was sent in response to befford's email sorry we don't have to distinguish befford's email from all of those thousands of other mass emails right i i mean we would we have not argued that that sort of generic employer email to its employees say uh you know we're changing the schedules everybody's coming in a half an hour early tomorrow that's that we don't consider that a relevant comparator right and so then the question then becomes the eight to ten emails about birthday parties and lost phone chargers are they like the thousands of other mass emails that don't have to be distinguished from befford's email or are they similar to befford's email in which case maybe they have to be distinguished isn't that the inquiry yes i think so although i would point the emails that we particularly point to are emails sent by other employees like beffert to all to the facility emails about non-work social gatherings i mean it's almost identical to what she did here with the only difference that begs the question are they is it almost identical and if we think there's almost identical then you're on some solid ground and we have to do a lot of other stuff but if we think that they're not identical if we think they're actually quite similar to the thousands of other workplace emails that are sent then that's the end of the analysis correct that is correct i would just draw the court's attention again to to the alj's findings at page seven of its decision where he specifically found that other employees for example sent notification of birthday plans for another employee throughout the facility that similar activities right i get i get that but you said that if they're different then they aren't probative of discriminatory application but don't they have to be different in a way that the policies or rationales the employer has stated make salient as opposed to a post hoc reason yes yes although yes i i i yes i'll leave it at that if there are no further questions i appreciate the court's time thank you we'll take the case under advisement
judges: Rogers, Pillard, Walker